IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CALIF P. GOSSETT,
      Petitioner,

v.                                Case No.:  3:04cv40/RS/EMT

JAMES R. McDONOUGH,[1]
      Respondent.
_____/

## ORDER, AMENDED REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under
28 U.S.C. § 2254 (Doc. 1).  Petitioner is represented by counsel.  Respondent filed an answer and
relevant portions of the state court record (Doc. 7).  Petitioner filed a reply (Doc. 10).  On May 9,
2005, an Order, Report and Recommendation was issued by the undersigned (Doc. 14).  This
Amended Report and Recommendation is submitted following the undersigned's discovery of two
clerical errors in the original Report and Recommendation.[2]  For the sake of clarity and judicial
economy, the original Report and Recommendation shall be vacated and this Amended Report and
Recommendation shall replace the former in full.   Although the Amended Report and
Recommendation does not change the substantive analysis in any way, the parties shall be given an
opportunity to file objections to this Amended Report and Recommendation pursuant to 28 U.S.C.
§ 636(b).  It remains the opinion of the undersigned that no evidentiary hearing is required for the

---

      [1]James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is
automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

      [2]On page 5 of the original Report and Recommendation, there is a clerical error in the heading of the section
addressing Petitioner's claim:  the section should be numbered III instead of IV.  Additionally, on page 9 there is a
clerical error in the last sentence of the section addressing Petitioner's claim:  the last sentence should state that the state
court denial of Petitioner's claim was not contrary to or an unreasonable application of Supreme Court law.

disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It further remains the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

       The background and procedural history of this case is undisputed.  On January 17, 2002, following a jury trial, Petitioner was convicted in the Circuit Court in and for Escambia County, Florida, of robbery with a weapon (Doc. 7, Ex. A at 5).  On February 20, 2002, he was sentenced to fifteen years of imprisonment (*id*. at 23-30).  Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal ("First DCA") (*id* at 32. Exs. C, D).  On February 25, 2003, the First DCA affirmed the conviction and sentence per curiam without opinion, with the mandate issuing March 13, 2003 (*id.*, Exs. E, F).  Gossett v. State, 838 So.2d 1150 (Fla. 1st DCA Feb. 25, 2003) (Table).

       Petitioner initiated the instant section 2254 action on February 10, 2004 (Doc. 1 at 1).  Respondent concedes that the petition is timely and that Petitioner satisfied the exhaustion requirement (Doc. 7 at 3-5).

II.     STANDARD OF REVIEW

       Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

       Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody
        pursuant to the judgment of a State court shall not be granted with respect to
        any claim that was adjudicated on the merits in State court proceedings unless
        the adjudication of the claim–
        (1)     resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established Federal law, as
                determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in

Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).[3]  The appropriate test

in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied - the state court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

Id., 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d

125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any

issue raised in a federal habeas petition upon which there has been an adjudication on the merits in

a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002);

Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the

controlling legal principles that are clearly established by the Supreme Court at the time of the state

court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court

---

[3]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the
Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529
U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices
Rehnquist, Kennedy, Thomas, and ---except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-
1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, 535 U.S. 1104, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Id. (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state

courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n. 4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." Section 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." (dictum)); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

Within this framework, the court will review Petitioner's claim.

III.    PETITIONER'S CLAIM

Petitioner claims that he was denied his Sixth Amendment right to self-representation when the trial court denied his motion to discharge his court-appointed attorney without informing him of his right to self-representation, as required by <u>Faretta v. California</u>, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). .

A.    <u>Clearly Established Supreme Court Law</u>

When knowingly and intelligently made, the accused may waive the right to counsel and elect to represent himself in a criminal trial.  <u>Faretta</u>, 422 U.S. at 835.  However, the accused must be clearly informed as to the disadvantages of self-representation, so "the record will establish that he knows what he is doing and his choice is made with eyes open."  *Id.* (quotation omitted); *see also* <u>Patterson v. Illinois</u>, 487 U.S. 285, 298, 108 S.Ct. 2389, 2398, 101 L.Ed.2d 261 (1988).  "The ideal method of assuring that a waiver of counsel is valid is for the trial court to conduct a pretrial hearing at which the accused is informed of the charges, basic trial procedures, and hazards of self-representation."  <u>United States v. Cash</u>, 47 F.3d 1083, 1088 (11th Cir. 1995) (citing <u>Strozier v. Newsome</u>, 926 F.2d 1100, 1104 (11th Cir. 1991) ("<u>Strozier II</u>")).  This helps to establish that the defendant unambiguously has chosen to represent himself.  <u>Cross v. United States</u>, 893 F.2d 1287, 1291 (11th Cir. 1990).  "While a pretrial hearing is preferred, it is not required. . . . The absence of a hearing will not give rise to a violation of the Sixth Amendment right to counsel in the 'rare cases [where] the record may support a waiver.'"  <u>Cash</u>, 47 F.3d at 1088 (quoting <u>United States v. Fant</u>, 890 F.2d 408, 409 (11th Cir. 1989) (per curiam)) (citations omitted).

However, to invoke his Sixth Amendment right under <u>Faretta</u>, a defendant must unambiguously state his request to represent himself, either orally or in writing, so that no reasonable person can say that the request was not made.  <u>Dorman v. Wainwright</u>, 798 F.2d 1358, 1366 (11th Cir. 1986).  Because of the gravity of the accused's decision, his request to proceed pro se must be clear and unequivocal.  <u>Cross</u>, 893 F.2d at 1290 (defendant did not clearly and unequivocally request to represent himself and waive counsel where defendant seemingly requested to proceed pro se, but clarified the nature of his request by explaining that he essentially wished to act as co-counsel) (citations omitted); *see also* <u>Stano v. Dugger</u>, 921 F.2d 1125, 1145 (11th Cir.

1991) (Faretta inapplicable where defendant did not assert or even "faintly request" right to self-representation, and his conduct showed that he never envisioned representing himself).  Once there is a clear assertion of the right to self-representation, the court should conduct the Faretta hearing. Raulerson v. Wainwright, 732 F.2d 803, 808 (11th Cir. 1984).  Courts should not "quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense." Brown v. Wainwright, 665 F.2d 607, 610 (Former 5th Cir. 1982) (full bench en banc) (citing Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1976) (courts must indulge every reasonable presumption against waiver of counsel)).  Equally, a defendant who initially requests to waive counsel may subsequently abandon or waive the waiver.  Dorman, 798 F.2d at 1367 (citing Brown, 665 F.2d at 611).  This may be accomplished through the defendant's request or deduced from his conduct reasonably showing that he has abandoned his original request.  Id. For example, a defendant who vacillates on the issue or continues to seek the benefit of representation may be found to have relinquished his request to represent himself. Id. (citing Brown, 665 F.2d at 612).

While the accused need not "continually renew his request to represent himself even after it is conclusively denied," the request may be considered abandoned if the court leaves the matter open and the defendant fails to re-assert his request.  Brown, 665 F.2d at 611.  In Brown, the trial court expressed doubt as to the ability of the defendant to carry on his own defense and, therefore, deferred ruling on the request and directed counsel to attempt to resolve the difficulties with his client.  Id. at 609.  Because the defendant began to again work with counsel and never renewed his request to proceed pro se despite ample opportunity to do so, he was held to have abandoned his request altogether.  Id. at 611.

B.    Federal Review of State Court Decision

Petitioner raised his claim in the direct appeal of his conviction.  The First DCA affirmed the conviction per curiam.  Although the state court denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable. See Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326-27 (11th Cir. 2000); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000); Hannon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997).

The state court records shows that on January 7, 2002, Petitioner filed a pro se motion to dismiss his court-appointed counsel alleging that counsel was performing "insufficient[ly]" in several respects (Doc. 7, Ex. A, Progress Docket Printout, line 75; Ex. A at 139-43).  The trial court denied the motion (*id.*, Progress Docket Printout, line 75).  Prior to jury selection on January 14, 2002, Petitioner told the trial court that he (Petitioner) had a "conflict" with his counsel because counsel told him that he (Petitioner) was going to prison (Doc. 7, Ex. A at 94).  The court responded that defense counsel was probably giving Petitioner an honest assessment of the strength of the State's case and the likely consequences of proceeding to trial (*id*. at 94-95).  Petitioner inquired if there was any way to "resolve" his case, and defense counsel and the prosecutor responded that the case could be resolved without a trial if Petitioner pled guilty to the charge, with his sentence to be determined by the court (*id*. at 95).

On January 17, 2002, the day of trial, prior to the jury's entering the courtroom, Petitioner complained to the trial court that his counsel failed to visit him the night before to prepare for trial (Doc. 7, Ex. B at 6-7).  The trial court inquired of counsel when he last discussed the case with Petitioner, and counsel responded that he conferred with Petitioner about the case prior to the trial of another of Petitioner's cases (*id*. at 8).  The trial court asked defense counsel if he was prepared to proceed; counsel responded in the affirmative, and the jury entered the courtroom (*id*. at 8-9). Later that morning, during a recess, the trial court clarified on the record that the trial on another of Petitioner's cases was held the previous week, and the court confirmed with defense counsel that counsel had prepared both cases for trial with the understanding that they would be tried in successive weeks (*id*. at 67-68).  Petitioner then told the court that counsel had failed to honor his promise to meet with him during the three-day period prior to trial to inform him of the status of a witness Petitioner had asked counsel to investigate (*id*. at 69-70).  Petitioner also complained that counsel failed to provide him with copies of depositions and failed to depose a witness (*id*. at 70-79). After inquiring of defense counsel into these matters, the trial court stated on the record that he disagreed with Petitioner's opinion that defense counsel had failed to fulfill his legal duties as counsel (*id*. at 77).  The trial court then reconvened Petitioner's trial (*id*. at 79).

Upon thorough review of the state court record, this court finds no evidence, in Petitioner's pro se written motion or his oral exchanges with the trial court, that Petitioner indicated, let alone made a clear and unambiguous request, that he wished to represent himself.

Petitioner argues that his request to discharge counsel triggered his right to a <u>Faretta</u> hearing. In support of his claim he cites state cases in which the First DCA, relying on <u>Faretta</u>, held that where a defendant expresses his desire to discharge his court-appointed counsel, the trial court must determine whether there is a reasonable basis for a finding of ineffective representation; if there is no such basis, the trial court must advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute, thus providing the defendant an opportunity to unequivocally demand to exercise his right to represent himself.  *See* <u>Taylor v. State</u>, 557 So.2d 138, 143 (Fla. 1st DCA 1990); <u>Jackson v. State</u>, 572 So.2d 1000, 1001 (Fla. 1st DCA 1990).

This court declines to adopt the Florida appellate court's interpretation of <u>Faretta</u>, that the Sixth Amendment right to self-representation is invoked when a defendant expresses dissatisfaction with his court-appointed counsel.  The clearly established Supreme Court law, as interpreted by the Eleventh Circuit, makes clear that to invoke the Sixth Amendment right under <u>Faretta</u>, a defendant must have unambiguously stated his request to <u>represent himself</u>.  *See* <u>Dorman</u>, 798 F.2d at 1366; <u>Cross</u>, 893 F.2d at 1290; <u>Stano</u>, 921 F.2d at 1145.  As the state court record conclusively establishes that Petitioner made no request to represent himself, the state court's denial of his Sixth Amendment claim was not contrary to or an unreasonable application of Supreme Court law.

Accordingly, it is **ORDERED**:

1.      The original Order, Report and Recommendation (Doc. 14) is **VACATED**, and this Order, Amended Report and Recommendation replaces the former in full.

2.      The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James V. Crosby, Jr. as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola this <u>11</u>$^{th}$ day of May 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

        Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).